UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEHDI SADEGHI<br><br>               Plaintiff<br><br>    v.<br><br>THE GOVERNMENT OF THE<br>ISLAMIC REPUBLIC OF IRAN<br>Its Ministries, Agencies, and<br>Instrumentalities<br>c/o Ministry of Foreign Affairs<br>Imam Khomeini St.<br>Imam Khomeini Sq.<br>Tehran, Iran<br>               Defendant | Case No. 1:25-cv-894 |

# COMPLAINT

Plaintiff Mehdi Sadeghi complains of the actions of the Defendant, the Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities, and states in support thereof as follows:

# PARTIES

1. Plaintiff Mehdi Sadeghi ("Mr. Sadeghi") is a United States citizen and a resident of the State of Washington. Mr. Sadeghi's family, specifically his wife and teenage son, were kidnapped, tortured, and/or sexually assaulted by Defendant, the Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities (hereinafter referred to as "Iran"). Mr. Sadeghi and his family were targeted because he is an Iranian dissident seeking

freedom and democracy for the Iranian people, and he has worked to expose ongoing corruption by Iranian officials.

2. Defendant, the government of the Islamic Republic of Iran, is a foreign sovereign designated as a state sponsor of terrorism by the United States Department of State. Iran has been continuously designated as a state sponsor of terrorism since 1984 and during all times relevant in this Complaint.[1] Its activities as complained of herein were outside the scope of immunity provided by the state sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA") in 28 U.S.C. § 1605A.

3. Plaintiff was domiciled in the state of Oklahoma at the time he and his family were harmed.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331 and pursuant to the FSIA, 28 U.S.C. § 1605A, which authorizes jurisdiction over Iran and other state sponsors of terrorism for acts of torture.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which authorizes venue "in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof."

## STATEMENT OF FACTS

**A. Iran Targeted the Sadeghi Family**

6. Mehdi Sadeghi was born in Iran in 1974 and became a United States citizen in July 2016.

---

[1] 49 Fed. Reg. 2836-02 (Jan. 23, 1984); https://www.state.gov/state-sponsors-of-terrorism/.

7. At the time of his naturalization, he resided in Oklahoma and worked as an engineering consultant.

8. In March 2017, Mr. Sadeghi traveled back to Iran and married Monireh Parsian whose prior husband had passed away several years earlier. She had a teenage son, Arshia Siyar, from her prior marriage who was born in 2004.

9. Mr. Sadeghi adopted Arshia when he married, and he intended to move his family to the United States after his adopted son finished secondary school.

10. In 2018, while living in Iran, Mr. Sadeghi and his wife became parents to their daughter A.S.

11. In 2019, Mr. Sadeghi began distributing leaflets opposing the Iranian regime and its lack of democratic freedoms during widespread protests that occurred between 2019–2020 because of government corruption, high fuel prices, and human rights abuses. One evening he was spotted by Iranian plain clothes police officers who arrested him and took him to their police station. Mr. Sadeghi was beaten and interrogated for several hours regarding his affiliation with Iranian dissident organizations. After the police finished their interrogation, Mr. Sadeghi was released in the morning with a warning to cease his activities.

12. Mr. Sadeghi's treatment by Iranian government agents only motivated him to work harder to expose corruption by Iranian officials, and he sought to distribute information about Iranian officials who plundered the assets of the Iranian people and used these assets to live luxurious lifestyles at the expense of the Iranian people.

13. In December 2020, Iranian intelligence officers arrested Mr. Sadeghi early in the morning. They interrogated him for over twelve hours and during the process threatened and

humiliated him. The Iranian intelligence agents released Mr. Sadeghi late in the evening, and they demanded that he leave Iran or risk losing his life.

14. In January 2021, Mr. Sadeghi fled Iran because he feared for his life. He traveled from Iran to Doha, Qatar and then to the United States where he returned to Oklahoma to work and earn funds for his wife and children. After arriving in Oklahoma, Mr. Sadeghi sought to find a way to reunite with his family while also continuing his efforts to publicize Iranian corruption.

15. In March 2021, Iranian officials from the Islamic Revolutionary Guard Corps ("IRGC") summoned Mr. Sadeghi's wife and teenage son for interviews at the Mazandaran intelligence center to gain information about Mr. Sadeghi and his activities.

16. Following these meetings, Iranian agents stopped Mr. Sadeghi's teenage son on the street and ordered him into their car. The agents wanted to know about Mr. Sadeghi's political activities, and they privately offered Mr. Sadeghi's teenage son money in exchange for spying on his father's activities.

17. In May 2021, after Mr. Sadeghi's son failed to cooperate, he and his mother were again summoned to the intelligence center. This time Mr. Sadeghi's son was stripped naked in front of his mother, and his hands and feet were tied to a pillar, and he was interrogated about Mr. Sadeghi's dissident activities. When his mother screamed and objected, Iranian intelligence officers took Mr. Sadeghi's son to another room and sexually assaulted him. He and his mother were subsequently released and told to gather information regarding the political opposition or the consequences for failing to comply would be even more severe.

18. In June 2021, IRGC agents concluded that Mr. Sadeghi's family was not cooperating with them. As Mr. Sadeghi's son was on his way home from school, IRGC agents arrested him and took him to an IRGC intelligence center for interrogation. During this

interrogation Mr. Sadeghi's son was blindfolded. They told him that he must provide all requested information or they would rape him or his mother. When he responded that they should not touch his mother, the officers stripped him naked, and he was beaten repeatedly. Iranian agents also hit him in the face and genitals. They placed a gag ring in his mouth to prevent him from closing his teeth and proceeded to engage in forced oral copulation.

19. Some of the agents also raped him, and he was sodomized with a police baton. Afterwards, they urinated and ejaculated on his face and ordered him to clean the floor with his tongue. When he failed to do as they ordered, they pulled out his tongue with pliers and threatened to cut it off if he did not do what they wanted. They also tied a rope around his neck and pulled him up and then beat him over the next several hours.

20. Late in the evening Iranian agents told Mr. Sadeghi's son they had new plans, and they blindfolded him and took him outside. One of the officers held a gun and said he would shoot Mr. Sadeghi's wife if his son didn't talk. After Mr. Sadeghi's son pleaded that he did not have any additional information to provide, the officers made a phone call and said they would spare Mr. Sadeghi's wife and son on condition that they worked to obtain additional information regarding Iranian dissident activities. They took Mr. Sadeghi's son and shoved him in a loosely tied sack and dumped him by the side of railway tracks around midnight. They left after warning Mr. Sadeghi's son that he should cooperate or they would rape either his mother or him.

21. The injuries Mr. Sadeghi's son sustained from this interrogation were documented by an Iranian doctor on June 10, 2021 within 24 hours after they occurred. Below is a photograph of contusions on Mr. Sadeghi's son:



22.     The day after Mr. Sadeghi's son was tortured, Iranian agents surreptitiously entered the family's apartment sometime after midnight while Mr. Sadeghi's wife, son, and daughter were sleeping. They entered the bedroom of Mr. Sadeghi's wife, and when she awoke, one of the agents was sitting on her and covering her mouth. The agents ripped off her clothes and tortured and raped her.  The injuries of Mr. Sadeghi's wife were documented by an Iranian doctor on June 12, 2021 within 24 hours after they occurred.

23.     In July 2021, Mr. Sadeghi's wife and son both received laboratory confirmations that they had been raped and sexually assaulted.

24.     In August 2021, Mr. Sadeghi flew from the United States to Armenia and rented an apartment in the city of Yerevan for his family so that they could flee to Armenia. They met him in Armenia two days after his arrival, and he stayed for a couple of weeks to help them with

their transition until he flew back to Oklahoma so he could continue to work and support them while they waited for United States visas.

25. In early October 2021, Mr. Sadeghi's wife received a knock on her apartment door in Armenia. When she asked who was there, she was told that representatives of the Intelligence Department of the Islamic Republic of Iran wanted to speak to her. She refused to open the door, and after the representatives left, she realized her family was being stalked in Armenia.

26. On October 14, 2021, Iranian agents attempted to kidnap Mr. Sadeghi's wife in Yerevan Armenia while she was shopping for food. During the attempt, her left arm and shoulder were seriously injured.

27. Armenian police managed to stop the kidnapping, and they arrested three kidnappers who admitted during interrogations that they were agents of the IRGC and had traveled using forged documents to abduct Mr. Sadeghi's wife and transfer her back to Iran.

28. An Armenian police investigation disclosed that the three kidnappers were renting an apartment near Mr. Sadeghi's family, and the kidnappers had photos and videos of Mr. Sadeghi's wife and two children. Armenian investigators also searched the kidnappers' apartment and discovered electroshock weapons, knives, anesthetics, and 25 grams of opium that could be used to facilitate a kidnapping. They also seized a black colored sedan and van.

29. In March 2022 an article was published on the AVATODAY website titled "*IRGC agents arrested in Armenia for kidnapping plot*," which discussed some of the details of the Iranian plan to abduct Mr. Sadeghi's family.[2]

---

[2] https://avatoday.net/node/17539

30. On August 21, 2022, Mr. Sadeghi's wife received the following text message that stated:

> If you do not cooperate with the Intelligence Organization of the Islamic Republic of Iran, you and your children will be ordered to be arrested and deported from the territory of Armenia to the Iranian court to investigate the crime of complicity in political crimes and corruptions with Mr. Mehdi Sadeghi with national code 9-005-876538-9.
> Ministry of Information of the Islamic Republic of Iran

31. Despite receiving this ominous threat, Mr. Sadeghi's family did not cooperate with Iran. Instead, they remained vigilant while they planned their departure from Armenia. Additionally, Mr. Sadeghi notified the U.S. Embassy in Yerevan about the ongoing security risks to his family.

32. In September 2022, Mr. Sadeghi sought the assistance of U.S. Senator for Oklahoma James Lankford to expedite visas for his family so they could leave Armenia.

33. In October 2022, Mr. Sadeghi's son went out shopping in the morning in Yerevan Armenia. Several men grabbed him and shoved him in a car. They drove him to an apartment for interrogation. At the apartment they sought information regarding the criminal case against the other Iranian agents, and they demanded that he obtain documents from his mother that concerned the Arminian investigation and his father's dissident activities. The agents beat Mr. Sadeghi's son and sexually assaulted him again to humiliate him and break his resistance. After nearly eight hours of interrogation, they released Mr. Sadeghi's son with instructions on what he needed to do to avoid further harm to himself and his family.

34. Once Mr. Sadeghi's son returned home, his family was fearful for their safety. They obtained the services of professional bodyguards and several neighbors in the community agreed to shop for the family so that they would no longer need to leave their apartment and risk further attacks.

35. Because of their security fears in Armenia, Mr. Sadeghi's family rarely left their apartment, and his daughter could no longer enjoy simple childhood pleasures like going to the park.

36. In February 2023, Mr. Sadeghi's family was interviewed by the United States Embassy in Armenia-Yerevan.

37. In May 2023, Mr. Sadeghi's wife, daughter, and son obtained United States visas and were finally able to travel to the United States where they are now residents.

38. Mr. Sadeghi's family remains traumatized from their experience. As a result of Iran's actions, Mr. Sadeghi's wife has experienced anxiety, depression, PTSD, nightmares, insomnia, social withdrawal, emotional flatness, and headaches. Mr. Sadeghi's son has experienced similar severe mental harm. This emotional and mental harm has impacted their relationships with Mr. Sadeghi and destroyed the quality of life they previously experienced.

39. Mr. Sadeghi has suffered significant emotional distress, including stress, anxiety, and depression as a result of learning that his family was stalked, abducted, and tortured by Iranian agents. This emotional distress and suffering is heightened with additional guilt because Mr. Sadeghi believes his family would not have been targeted or experienced any suffering if he had not opposed the Iranian government.

40. As a result of the kidnapping and torture of his family by Iranian agents, Mr. Sadeghi has sought the help of therapist to help relieve his mental suffering. He and his family will never be the same because of Iran's state sponsored terrorism against them.

**B. Iran Uses Torture and Sexual Violence to Terrorize Political Opponents**

41. Iran's use of torture and sexual violence against Mr. Sadeghi's family is not unique, and Iran's government has systematically sought to repress the freedoms of the Iranian people. As United States Secretary of State Antony J. Blinken stated in March 2023:

> The United States remains deeply concerned that Iranian authorities continue to suppress dissent and peaceful protest, including through mass arrests, sham trials, hasty executions, the detention of journalists, and the use of sexual violence as a means of protest suppression.[3]

42. The United States Department of State's *2022 Country Reports on Human Rights Practices: Iran* noted: "NGOs and international media reported numerous instances of protesters being tortured, beaten, or raped in detention."[4] It further noted:

> Commonly reported methods of torture and abuse in prisons included threats of execution, rape, and sexual assault, as well as threats of rape of prisoners or their family members, forced vaginal and anal examinations, sleep deprivation, waterboarding, suspension, forced ingestion of chemical substances, deliberate deprivation of medical care, electroshock including the shocking of genitals, burnings, the use of pressure positions, and severe and repeated beatings.

43. The United States Commission on International Religious Freedom ("USCIRF") made similar findings in its 2023 annual report. This commission is a bipartisan U.S. federal government agency created by the 1998 International Religious Freedom Act ("IRFA") to monitor the universal right to freedom of religion or belief ("FoRB") abroad, and its reports are authorized by 22 U.S.C. § 6412(b). The USCIRF report found that Iranian security forces

---

[3] U.S. Department of State Press Statement from Secretary of State Antony J. Blinken, *Sanctioning Those Connected to Human Rights Abuses in Iran* (Mar. 8, 2023), available at: https://www.state.gov/sanctioning-those-connected-to-human-rights-abuses-in-iran/#:~:text=The%20United%20States%20remains%20deeply,a%20means%20of%20protest%20suppression.

[4] U.S. Department of State, *2022 Country Reports on Human Rights Practices: Iran*, https://www.state.gov/reports/2022-country-reports-on-human-rights-practices/iran/

"repeatedly sexually harassed, sexually assaulted, and raped scores of peaceful protesters."[5] The report also noted "Iranian authorities' systematic use of sexual and gender-based violence against [protestors] represents a purposeful weaponization of religious conceptions of purity, modesty, and gender hierarchy in an effort to shame Iranians out of peacefully asserting their fundamental right to religious freedom."

44. In a fact sheet from April 2023 titled "*Sexual and Gender-Based Violence [SGBV] Against Religious Freedom Protesters in Iran*,"[6] USCIRF stated:

> Iranian officials are using sexual harassment, assault, and rape to shame, silence, and traumatize prisoners who were arrested for peacefully asserting their freedom of religion or belief. Some of the survivors of this state-perpetrated SGBV are minors.

45. Additionally, the fact sheet recognized:

Men who have participated in protests have also been victims of state-perpetrated SGBV. For example, police in Mashhad sexually assaulted a 30-year-old man attending the 40-day commemoration of the shooting of Sunni worshippers leaving Friday prayers in Zahedan on November 9. Iranian security forces have also committed SGBV against children arrested during or after protests. These include threats of rape, electric shock to the genital area, groping of genitals, and in one case, sodomizing with a hose pipe. . . .[In a documented case,] IRGC agents raped [a male prisoner] "causing rectal bleeding and injuries severe enough to require hospitalization."

## COUNT I
### CAUSE OF ACTION – 28 U.S.C. § 1605A(c)
### TORTURE & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46. The above paragraphs are incorporated as if set forth herein.

47. The Foreign Sovereign Immunities Act ("FSIA") as codified in 28 U.S.C. § 1605A(a) authorizes claims to be brought against Defendant for acts of terrorism and torture.

---

[5] https://www.uscirf.gov/sites/default/files/2023-05/2023%20Annual%20Report_1.pdf.
[6] https://www.uscirf.gov/sites/default/files/2023-04/2023%20Factsheet%20SGBV%20Iran.pdf

48. Section 1605A authorizes a claim for torture against a foreign state if the following requirements are satisfied:

(a) the defendant was a designated state sponsor of terrorism at the time of claimant's harm,

(b) the claimant was a national of the United States,

(c) money damages are sought for personal injury that was caused by an act of torture or the provision of material support or resources for such an act if such act or provision of material support or resources was engaged in by an official, employee, or agent of the foreign state, and

(d) the foreign state is provided a reasonable opportunity to arbitrate the claim if the conduct took place on its soil.

49. These requirements are satisfied here.

50. Iran was designated a state sponsor of terrorism by the Secretary of State on January 19, 1984. *See* 49 Fed. Reg. 2836 (Jan. 23, 1984).

51. Plaintiff Mehdi Sadeghi has been a United States citizen since 2016 and at all times relevant to this complaint.

52. Iran committed an act of torture as defined in the FSIA according to the meaning provided in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note). This defines torture as:

> any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

53. Defendant and its agents intentionally subjected Mr. Sadeghi's wife and teenage son to acts of torture that included severe pain and suffering, physical and mental abuse, and threats to their life, all with the intent to obtain information regarding Mr. Sadeghi's dissident activities, compel their cooperation, and coerce Mr. Sadeghi to cease his opposition to the Iranian regime.

54. A foreign state is held vicariously liable for the acts of its officials, employees, or agents.

55. Defendant and its agents' use of torture, including sexual assault, physical abuse, and death threats, against Mr. Sadeghi's wife and teenage son was intentional and reckless, extreme and outrageous and caused Plaintiff severe emotional distress.

56. Defendant and its agents' treatment of Mr. Sadeghi's wife and teenage son violated acceptable norms of treatment under both U.S. and international law and was also for that reason extreme and outrageous.

57. Plaintiff continues to suffer severe psychological trauma because of Iran's intentional acts of torture against his wife and teenage son.

58. Plaintiff is providing Defendant with an offer to arbitrate that is being served contemporaneously with this complaint.

## **PRAYER FOR RELEF**

59. As a result of Mehdi Sadeghi's injuries that he suffered due to acts of torture to his wife and son, Plaintiff is entitled to economic damages, solatium, and pain and suffering, all of which are recoverable under the FSIA. 28 U.S.C. § 1605A.

60. In addition to all appropriate compensatory damages, Plaintiff is entitled to punitive damages because Defendant and its agents' acts were intentional, malicious, and performed deliberately to injure, damage, and harm Plaintiff and his family.

61. Plaintiff further seeks costs, attorney's fees, and such other relief as may be just and proper.

Date: March 26, 2025

Respectfully submitted,

/s/ Nathaniel A. Tarnor
(D.C. Bar No. 985457)
Hagens Berman Sobol Shapiro, LLP
594 Dean Street, Suite 24
Brooklyn, NY 11231
Telephone: (646) 543-4992
Email: NathanT@hbsslaw.com

Steve W. Berman (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiff*